UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

MARIE CHANTALE JOSEPH,

              Plaintiff,

- against -

NORTHWOOD GROUP, LLC;
CENTURY 21 WOLFF & SON BUSINESS
BROKERS INC.;
FREMONT INVESTMENT AND LOAN;           Civil Action No. 08-CV-3644 (SCR)
WILNER LUCTAMAR;
SG AMERICAS SECURITIES;
GMAC MORTGAGE;
XYZ CORPORATION, (Said name being fictitious, it
being the intention of Plaintiff to designate any
corporation having a legal interest in Plaintiff's
mortgages);
Does 1-10, (Said names being fictitious, it being the
intention of Plaintiff to designate any individual or
corporation responsible in some manner for the injuries
sustained by Plaintiff),

              Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF MARIE CHANTALE JOSEPH'S OPPOSITION
TO FREMONT INVESTMENT & LOAN'S MOTION TO DISMISS THE COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTS ...................................................................................................................... 1

III.    ARGUMENT ............................................................................................................. 4

        A.      The Court Must Limit Itself to the Facts Stated in the Complaint......................... 4

        B.      Notice Pleading Governs Here.............................................................................. 5

        C.      Plaintiff Has Sufficiently Pleaded that Northwood Group and/or
                Luctamar Acted as an Agent of Fremont ................................................ 7

        D.      Even if the Court Finds that Mrs. Joseph Has Not Sufficiently
                Pleaded an Agency Relationship Between Luctamar and Fremont,
                the Complaint Should Not Be Dismissed because Agency Is Not
                Required For Each Cause of Action Against Fremont ........................... 9

        E.      The Substantive Federal Causes of Action that Fremont Challenges
                Have Been Adequately Pleaded Under Either a Notice Pleading
                Standard or a Heightened Standard.......................................................... 9

                1.      The Fair Housing Act Claims .................................................. 9

                2.      The ECOA Claims .................................................................. 14

                3.      The Discrimination Claims under §§ 1981, 1981, and 1985 ................... 15

        F.      Mrs. Joseph's State Law Claims Allege Valid Causes of Action
                Against Fremont...................................................................................... 16

                1.      The Complaint Contains Detailed Allegations That More Than
                        Meet the Pleading Requirements of New York State General
                        Business Law §349 ................................................................. 16

                2.      The Complaint Contains Detailed Allegations That More Than
                        Meet the Pleading Requirements for a Claim of Fraud ............................. 18

                3.      The Complaint Contains Detailed Allegations That More Than
                        Meet the Pleading Requirements of New York Human Rights Law........ 19

        G.      If the Federal Claims Were Dismissed Against Fremont, This Court
                Should Retain Pendent Jurisdiction Over Fremont and All Other Defendants
                to Prevent Multiple, Duplicative Trials .............................................. 19

H.    If the Court Grants Fremont's Motion to Dismiss, the Court Should
Grant Plaintiff Leave to Amend the Complaint ................................................... 21

V.    CONCLUSION ................................................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

*Barkley v. Olympia Mortgage Co.*,
    No. 04 CV 875, 2007 WL 2437810 (E.D.N.Y. Aug. 22, 2007) ..................7, 12, 13, 15

*Beard v. Worldwide Mortgage Corp.*,
    354 F. Supp. 789 (W.D. Tenn.)......................................................................................10

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)............................................................................................5, 6

*Boykin v. KeyCorp*,
    521 F.3d 202 (2d Cir. 2008).................................................................................5, 6, 14

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
    373 F.3d 296 (2d Cir. 2004)........................................................................................20

*Chen v. St. Beat Sportswear, Inc.*,
    364 F. Supp. 2d 269 (E.D.N.Y. 2005) ........................................................................20

*City of Chicago v. International College of Surgeons*,
    522 U.S. 156 (1997)....................................................................................................19

*Conley v. Gibson*,
    355 U.S. 41 (1957)........................................................................................................6

*Erickson v. Pardus*,
    127 S. Ct. 2197 (2007).........................................................................................5, 6, 8, 14

*Foman v. Davis*,
    371 U.S. 178 (1962)....................................................................................................21

*Iqbal v. Hasty*,
    490 F.3d 143 (2d Cir. 2007)..........................................................................................6

*Kempkes v. Downey*,
    No. 07-CV-1298, 2007 WL 852765 (S.D.N.Y. Mar. 31, 2008) ......................………4

*Matthews v. New Century Mortg. Corp.*,
    185 F. Supp. 2d 874 (S.D. Oh. 2002) ...........................................................10, 12, 14

*McAnaney v. Astoria Finance Corp*,
    357 F. Supp. 2d 578 (E.D.N.Y. 2005) ........................................................................20

*Mich. Protection and Advocacy Service, Inc. v. Babin*,
    18 F.3d 337 (6th Cir. 1994) .......................................................................10

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
    102 F.3d 660 (2d Cir. 1996) ................................................…….. 4

*Ofori-Tenkorang v. America International Group, Inc.*,
    460 F.3d 296 (2d Cir. 2006)...................................................................6

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998) ................................................................ 4

*Ramirez v. Greenpoint Mortgage Funding, Inc.*, No. C08-0369, 2008 WL
    2051018 (N.D. Cal. May 13, 2008) ...........................................................21

*Ronzani v. Sanofi S.A.*,
    899 F.2d 195 (2d Cir. 1990)...................................................................21

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293  Fed. R. Civ. P. 15 (a)(2)....................................................21

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002)......................................................................6, 14, 17

*The President & Fellows of Yale College*,
    237 F.3d 81 (2d Cir. 2000)...............................................................10, 19

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966)...........................................................................19

*United States Fire Insurance Co. v. United Limousine Serv., Inc.*,
    328 F. Supp. 2d 450 (S.D.N.Y. 2004)....................................................19, 20

*In re Walsh*,
    157 B.R. 46 (D.R.I. 1993).....................................................................7

## STATE CASES

*Busk v. Hoard*, 396 P.2d 171 (Wash. 1965) ................................…….. 7

*Equicredit Corp. of N.Y. v. Turicos*, 300 A.D.2d 344 (N.Y. App. Div. 2002) .................11

*Williamson v. Clark*,120 So. 2d 637 (Fla. App. 1960).........................................8

## FEDERAL STATUTES

15 U.S.C. § 1691 *et seq*...................................................................................9

28 U.S.C. § 1367.................................................................................19, 20, 21

28 U.S.C. § 1367(a) ..................................................................................20

42 U.S.C. § 3604(b) ........................................................................9, 10, 11

42 U.S.C. § 1981, 1982(b) ...........................................................15, 16

Fed. R. Civ. P. 8(a) .......................................................................................5

Fed. R. Civ. P. 8(e) .......................................................................................6

Fed. R. Civ. P. 9(b) ....................................................................………… 18

## I.    INTRODUCTION

Two years ago–when banks like Fremont Investment & Loan ("Fremont") eagerly issued questionable loans to unqualified buyers - Mrs. Joseph was intentionally targeted by a fellow Creole-speaking Haitian, Mr. Luctamar, to take out a loan she could not afford, with terms that were grossly unfair.  Because Luctamar was acting as Fremont's agent at all relevant times his acts should be imputed to Fremont.  In other words, Fremont intentionally discriminated against Mr. Joseph based on her national origin.  This type of discrimination is known as "reverse redlining" and it is cognizable under the Fair Housing Act and the Equal Credit Opportunity Act.  And all of this was included in Mrs. Joseph's Complaint.  As such, the Court should deny Fremont's request to dismiss the Complaint.

## II.    FACTS

Plaintiff Mrs. Joseph is a Haitian woman whose native language is Creole.[1]  Mrs. Joseph works as a babysitter and her husband, Daniel Joseph ("Mr. Joseph"), works as a taxi driver.[2]  Like Mrs. Joseph, Mr. Joseph's native language is Creole, and he traces his national origin to Haiti.[3]  Both the Josephs have a basic understanding of spoken English but are not fluent in English.[4]  They both possess limited reading and writing skills which are not sufficient to navigate the complex documents used in real estate or mortgage transactions.[5]  Before the transaction in issue in this case, neither of the Josephs had ever purchased real estate.

In the fall of 2005, Mr. Joseph met Defendant Wilner Luctamar, a Haitian real estate sales agent for Defendant Century 21 Wolff & Son Business Brokers, Inc. ("Century 21") and a mortgage representative for Defendant Northwood Group, LLC ("Northwood") while Luctamar

---

[1] Compl. ¶ 11.
[2] *Id*. ¶ 26.
[3] *Id*. ¶ 12.
[4] *Id*. ¶ 13.
[5] *Id*. ¶ 13, 64.

was soliciting other Haitian cab drivers.[6]  Luctamar told Mr. Joseph that he "would take care of" the Josephs and help them buy a home when they were ready.[7]  Luctamar communicated with the Josephs primarily in Creole, their native language, to further instill a sense of security.[8]  And because all defendants, including Fremont, were agents of each other and were acting within the scope of the agency while engaged in the acts, omissions and other conduct described in the complaint,[9] Luctamer's acts can be – and should be – imputed to Fremont.

Later in the fall of 2005, the Josephs contacted Luctamar to begin the process of buying a home.[10]  Luctamar agreed to represent the Josephs and told the Josephs that he would find the best mortgage for the Josephs, that the Josephs should not worry and, again, he "would take care of" the Josephs.[11]  Luctamar knew that Mrs. Joseph worked as a babysitter and that Mr. Joseph was a taxi driver.[12]  It is believed that Luctamar knew that the Josephs had no experience with the process of buying a home and were unable to enter real estate transactions without the assistance of mortgage and real estate professionals.[13]

After seeing the home at 168 North Lawn Ave., Elmsford, NY (the "Home"), Luctamar told the Josephs that he could and would assist them in obtaining a bank loan on reasonable terms.[14]  Shortly after initiating the process to purchase the Home, Luctamar informed the Josephs that Mr. Joseph had bad credit and suggested that Mr. Joseph ask someone to sign the mortgage with Mrs. Joseph and in place of Mr. Joseph.[15]  Innocent Augustin ("Augustin") was

---

[6] *Id.* ¶ 24, 25.
[7] *Id.* ¶ 26.
[8] *Id.* ¶ 25.
[9] *Id.* ¶¶ 22, 67.
[10] *Id.* ¶ 26.
[11] *Id.*
[12] *Id.*
[13] *Id.* ¶ 12, 64.
[14] *Id.* ¶ 26.
[15] *Id.* ¶ 30.

enlisted as a substitute for Mr. Joseph on the mortgage.[16]  Like Mr. Joseph, Augustin, whose native language is Creole and traces his national origin to Haiti, works as a cab driver.[17] Augustin and Mrs. Joseph both provided documents to Luctamar to begin processing the loan.[18]

It is believed that Luctamar filled out loan applications in the name of Mrs. Joseph and Augustin, which, unknown to the Josephs and Augustin, included false information related to Mrs. Joseph's income, her marital status, her lack of children and Mr. Augustin's income.[19]  The loan applications were then provided to Defendant Fremont who shared a common purpose and interest in completing the loan with Luctamar, Northwood and Century 21.[20]  Even Defendant Fremont admits Northwood was authorized to select a settlement agent to represent Fremont at the closing of the loan.[21]

In 2006, Fremont approved Mrs. Joseph and Mr. Augustin for a 30-year ARM mortgage in the amount of $420,000 with an initial interest rate of 8.8% ("the first mortgage").[22]  The loan had an initial payment of approximately $3,080 per month.[23]  The interest rate adjusted on May 1, 2008 and will adjust again every six months thereafter.[24]  Fremont also approved Mrs. Joseph and Mr. Augustin for a second mortgage in the amount of $78,750 with a fixed rate of 11% ("the second mortgage").[25]  The monthly payments for the second mortgage are $749.96.[26]

Upon closing, Mrs. Joseph and Augustin were given many English language documents with no explanation as to what the documents were or what the effect of signing those documents

---

[16] *Id.* ¶ 31.
[17] *Id.*
[18] *Id.* ¶ 33.
[19] *Id.* ¶ 36, 37.
[20] *Id.* ¶ 49, 67.
[21] *See,* Fremont's Memorandum of Law in Support of its Motion to Dismiss at page 3 ("Fremont MoL").
[22] *Id.* ¶ 49.
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*

would be.[27]  Luctamar did not explain or translate these documents and merely stated that they were "for the house" or "for the loan."[28]

Prior to and during the closing, neither Luctamar nor anyone else informed the Josephs that Mrs. Joseph was entering into two separate loan agreements and the amount of the monthly payments.[29]  The Josephs only learned of the existence of the two mortgages and the amount of the monthly payments when they received their first statements from Fremont.[30]

## III.    ARGUMENT

### A.    Because the Court Must Limit Itself to the Facts Stated in the Complaint, Fremont's References to Extraneous Materials Should Be Rejected

"When considering a Rule 12(b)(6) motion, a court must limit itself to facts stated in the complaint, documents attached to the complaint, and documents incorporated into the complaint."[31]  "A court may also consider public records."[32]  Indeed, such a motion is ordinarily to be decided "on the four corners" of the pleadings, without reference to extraneous evidence.[33]

In *Newman & Schwarz v. Asplundh Tree Expert Co.*, the defendant moved to dismiss the plaintiff's complaint pursuant to Rule 12(b)(6) for failure to state a claim.[34]  The motion was supported by an sixteen-paragraph factual Affirmation and several attached exhibits to which no reference had been made in the complaint.[35]  "In making its decision to grant [the defendant]'s 12(b)(6) motion, the district court explicitly relied upon material which was not in the pleadings,

---

[27] *Id.* ¶¶ 51, 52, 54.
[28] *Id.* ¶ 66.
[29] *Id.* ¶¶ 54, 55, 57.
[30] *Id.* ¶ 60.
[31] *Kempkes v. Downey*, No. 07-CV-1298, 2007 WL 852765, at *3 (S.D.N.Y. Mar. 31, 2008) (citations omitted).
[32] *Id.*
[33] *See, e.g., Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662-63 (2d Cir. 1996); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998) ("We limit our review, as we must, to the allegations contained within the four corners of [the plaintiff]'s complaint.").
[34] 102 F.3d at 661.
[35] *Id.*

specifically the Affirmation and its attachments."[36]  In reversing the district court, the Second

Circuit held that "[t]he district court improperly relied upon information outside the four corners

of [the plaintiff]'s complaint" and found that "the complaint states a claim upon which relief may

be granted."[37]

The Second Circuit's holding in *Newman* is applicable here.  Fremont has improperly

attached to its Motion to Dismiss the following documents which are neither attached to nor

incorporated into the Complaint:

> **Ex. A** – A copy of the contract memorializing the sale of Mrs.
>     Joseph's home.
> **Ex. B** – A copy of the residential mortgage application.
> **Ex. C** – Copies of two fully executed notes evidencing Mrs.
>     Joseph's indebtedness to Freemont.
> **Ex. D** – Copies of two fully executed mortgages conveying
>     security interests in Mrs. Joseph's home to Fremont.
> **Ex**. E – Plaintiff's complaint to the U.S. Department of Housing
>     and Urban Development.

Because the documents described above and annexed to Fremont's Motion to Dismiss

traverse the four corners of the Complaint, they should therefore be excluded from consideration

of this court.

### B.     Notice Pleading Governs Here

Rule 8 states that "[a] pleading that states a claim for relief must contain: (1) a short and

plain statement of the grounds for the court's jurisdiction . . . (2) a short and plain statement of

the claim showing that the pleader is entitled to relief."[38]  "Specific facts are not necessary; the

statement need only 'give the defendant fair notice of what the claim is and the grounds upon

which it rests.'"  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp.*

*v. Twombly*, 127 S. Ct. 1955 (2007)); *see also Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir.

---

[36] *Id.* at 662.
[37] *Id.* at 663.
[38] Fed. R. Civ. P. 8(a).

2008) ("[B]oth *Twombly* and *Erickson* explicitly disavow that Rule 8(a) requires any plaintiff . . . to plead 'specific facts.'").

The Second Circuit recently stated that a Fair Housing Act claim "need only satisfy Rule 8(a)'s standard of a 'short and plain statement of the claim showing that [the plaintiff] is entitled to relief."[39] The *Boykin* court also noted that both *Bell Atlantic* and *Erickson* "explicitly disavow that Rule 8(a) requires any plaintiff" to plead specific facts.[40] Thus, notice pleading is the standard.

Despite this law, Fremont asks this Court to apply a "heightened" pleading standard. Given the Second Circuit's *Boykin* decision, as cited above, plaintiff disagrees.[41] And Fremont has not pointed to any Federal Rule that supports its position. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002) (stating that heightened pleading requirements "must be obtained by the process of amending the Federal Rules and not by judicial interpretation.") But even if the Court

---

[39] *Boykin*, 521 F.3d at 213.

[40] *Id.* at 215.

[41] Plaintiff notes that the Supreme Court has stated that heightened pleading requirements "must be obtained by the process of amending the Federal Rules and not by judicial interpretation." *Swierkiewicz*, 534 U.S. 506, 515 (2002) (finding that the Federal Rules do not require a heightened pleading standard for employment discrimination suits); *see also Iqbal v. Hasty*, 490 F.3d 143, 154 (2d Cir. 2007) ("The Court again emphasized that the judicially imposed heightened pleading standard conflicted with Rule 8(a) and that a heightened pleading standard could be attained only 'by the process of amending the Federal Rules, and not by judicial interpretation.'"

While there appears to be some debate about when a heightened standard should apply (as discussed below), Plaintiff respectfully submits that this debate does not change the standard for this case as recited in *Boykin.* In *Iqbal*, the Second Circuit noted that there is "[c]onsiderable uncertainty concerning the standard for assessing the adequacy of pleadings" as a result of the Supreme Court's decision in *Bell Atlantic*, which seemingly altered the pure notice pleading standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Iqbal*, 490 F.3d at 155. The Second Circuit stated that "the nature and extent of that alteration is not clear because the Court's explanation contains several, not entirely consistent, signals[.]" *Id.* The Second Circuit pointed to the fact that the Supreme Court "explicitly disclaimed that it was 'requiring heightened fact pleading of specifics' and emphasized the continuing viability of *Swierkiewicz* . . . which had rejected a heightened pleading standard." *Id.* at 156 (internal citations omitted). In addition, the Second Circuit pointed to the Supreme Court's decision in *Erickson*, which was decided two weeks after *Bell Atlantic* and used the traditional notice pleading requirement of *Conley*. *Id.* at 157.

In light of this uncertainty, the Second Circuit determined that heightened fact pleading was not always required and that the notice pleading requirement was still a valid standard. *See id.* at 158 ("[T]he Court is not requiring a universal standard of heightened fact pleading.") Factual allegations to amplify a claim are needed only in "those contexts where [factual] amplification is needed to render a claim plausible." *Id.* (emphasis in original). For example, the Second Circuit held that the plaintiff's conditions of confinement claims met the notice pleading standard. *Id.* at 169 ("Under a notice pleading standard, reaffirmed in *Bell Atlantic* and *Erickson*, these allegations are sufficient to state a claim that Hasty failed to remedy constitutional violations of which he was aware.")

were to agree with Fremont, Mrs. Joseph has adequately pleaded sufficient facts to meet this alleged higher burden.

Rule 8 also requires that pleadings be "construed to do justice."[42]  And when considering a motion to dismiss, a court must "accept all factual allegations as true and draw all reasonable inferences in plaintiff's favor."[43]

### C.    Plaintiff Has Sufficiently Pleaded that Northwood Group and/or Luctamar Acted as an Agent of Fremont

With this standard in mind, we first address Fremont's theme that runs throughout its motion to dismiss that it cannot be held liable for the acts and misdeeds of the mortgage broker (Northwood Group or Northwood Group's employee, Luctamar) because Lucatmar's acts cannot be imputed to Fremont.[44]  In other words, Fremont alleges that Luctamar is not an agent of Fremont and that Mrs. Joseph has not said that he was.

As an initial matter, the Court should reject Fremont's assertions that Luctamar cannot be an agent of Fremont as a matter of law.  On the contrary, a mortgage broker can be found to be the agent of the lender.  For example, the United States Bankruptcy Court for the District of Rhode Island, a court that regularly handles lending issues, specifically found that an agency relationship exists where the mortgage brokers and the lender had a common interest in selling their services to vulnerable people.[45]  In *In re Walsh*, the court found the lender to be an agent of the mortgage brokers because the mortgage brokers and the lender implemented "a carefully thought out course of action . . . designed specifically to avoid having to comply with . . . laws

---

[42] Fed. R. Civ. P. 8(e).
[43] *Barkley v. Olympia Mortgage Co*., No. 04 CV 875, 2007 WL 2437810, at *9 (E.D.N.Y. Aug. 22, 2007) (citing *Ofori-Tenkorang v. Am. Int'l Group, Inc*., 460 F.3d 296, 298 (2d Cir. 2006)).
[44] *See e.g.*, Fremont's MoL ¶¶ 16, 26 and 32.
[45] *In re Walsh*, 157 B.R. 46, 48 (D.R.I 1993).

intended to protect distressed and unsophisticated consumers."[46]  Other courts have reached a similar result.[47]

As seen, the determination of agency relationship *vel non* is a fact-specific inquiry. Whether such a relationship exists here, in fact, will be the subject of intense discovery over the next few months and eventually decided by the jury at trial.  But there can be no question that the Complaint adequately pleads that such a relationship exists, such that the required discovery can proceed and the issue can be decided by the jury.

The Complaint makes clear that all of the defendants were agents of one another and acted within that scope of agency.  Specifically, paragraph 22 of the Complaint states:

> At all times alleged herein, all of the defendants were agents, servants and employees of each other and were acting within the scope of such agency or employment while engaged in the acts, omissions and other conduct alleged in this complaint, or the alleged acts, omissions and other conduct of each defendant were subsequently ratified or adopted by the other defendants.[48]

In addition, Plaintiff alleges that all of the Defendants "shared a common purpose and interest and the acts of one may be imputed to the others."[49]  Simply put, this is enough to satisfy the requirements of Federal Rule 8(a), because "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"[50] And even if a flexible plausibility standard is required, a claim that a lender is conspiring with mortgage broker to engage in illegal and discriminatory practices is completely plausible in light of the court decisions described above.  Furthermore, the claim is completely plausible because lenders and mortgage brokers have an incentive to work together because their profits depend on

---

[46] *Id.* at 48.
[47] *See Williamson v. Clark*, 120 So. 2d 637, 637 (Fla. App. 1960); *Busk v. Hoard*, 396 P.2d 171, 175 (Wash. 1965)
[48] Compl. ¶ 22.
[49] Compl. ¶ 67.
[50] *Erickson*, 127 S. Ct. at 2200

the size of the loans and the number of the loans the mortgage broker is able to complete. Thus, these claims are certainly plausible and sufficient to meet either Rule 8(a)'s requirement or any plausibility standard.

**D.    Even If the Court Finds That Mrs. Joseph Has Not Sufficiently Pleaded an Agency Relationship Between Luctamar and Fremont, the Complaint Should Not Be Dismissed Because Agency Is Not Required For Each Cause of Action Against Fremont**

Mrs. Joseph's causes of action against Fremont do not rise and fall on agency because many of the causes of action are based either on intentional discrimination or on a pattern and practice of discrimination. Specifically, Mrs. Joseph has alleged that Fremont has directly violated the Fair Housing Act, 42 U.S.C. § 3604 and the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* by "regularly refer[ing] applicants or prospective applicants, or select[ing] or offer[ing] to select creditors to whom requests for credit may be made, on the basis of national origin."[51] Agency is not required here.

**E.    The Substantive Federal Causes of Action That Fremont Challenges Have Been Adequately Pleaded Under Either a Notice Pleading Standard or a Heightened Standard**

In addition to challenging the sufficiency of the Complaint's allegations regarding agency, Fremont challenges the substantive grounds for relief as alleged. The court should reject Fremont's motion on these points for the reasons stated below.

**1.    The Fair Housing Act Claims**

Mrs. Joseph alleges violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604 *et seq.* Defendant Fremont seeks to dismiss these claims on the ground that section 3604 is inapplicable to Fremont and, additionally, that the Complaint fails to properly assert a claim under section

---

[51] Compl. ¶ 78.

3605.[52]  As discussed herein, the Complaint amply alleges the elements of a section 3605 claim, and asserts a proper claim under section 3604, against Fremont.

Fremont argues that section 3604 only applies to discrimination in the "sale or rental" of property, and that because Fremont "did not engage in any sale or rental of real property, but merely provided Joseph with financing with which to purchase the Premises," section 3604 is wholly inapplicable.[53]  Fremont appears to ignore the text of the statute, basing its argument entirely on the title of the statute.  Section 3604(b), the specific provision of the statute applicable to Fremont, sets forth in pertinent part:

> Discrimination in the sale or rental of housing and other prohibited practices.
>
> As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, . . . because of race, color, religion, sex, familial status, or national origin.[54]

The text of section 3604 is explicit on its face with regard to its applicability to not only the sale and rental of a dwelling, but also to the terms, conditions and privileges thereof.  In fact, the FHA "is to be read liberally, so that its terms reach transactions that fall beyond the literal scope of selling or renting housing."[55]  *See Beard v. Worldwide Mortgage Corp.*, 354 F.Supp. 789, 809 (W.D. Tenn. 2005) ("[T]he language of § 3604(b) is broad enough to encompass home improvement loans and refinancing loans because the burden of the debt affects individuals ability to buy or sell a dwelling.").

---

[52] Fremont MoL ¶¶ 2, 5.
[53] Fremont MoL ¶ 2.
[54] 42 U.S.C. § 3604(b) (emphasis added).
[55] *Matthews v. New Century Mortg. Corp.*, 185 F.Supp.2d 874, 885 (S.D. Oh. 2002) (citing *Mich. Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 344 (6th Cir. 1994).

Indeed, echoing the language of the Second Circuit, this court aptly observed in *Burrell v. State Farm and Cas. Co.* that the FHA applies to the financing and brokerage associated with the sale or rental of a home:

> The Court of Appeals for the Second Circuit has explained that "the FHA prohibits those practices that make housing unavailable to persons on a discriminatory basis as well as discriminatory terms and conditions with respect to housing that is provided." *Hack v. The President & Fellows of Yale College*, 237 F.3d 81, 88 (2d Cir. 2000). The Act "was designed primarily to prohibit discrimination in the sale, rental, <u>financing, or brokerage</u> of private housing and to provide federal enforcement procedures for remedying such discrimination so that members of minority races would not be condemned to remain in urban ghettos in dense concentrations where employment and educational opportunities were minimal." *Otero v. New York City Hous. Auth.*, F.2d 1122, 1133 (2d Cir. 1973).

226 F. Supp. 2d 427, 441 (S.D.N.Y. 2002) (holding that plaintiffs sufficiently stated a claim against defendant for violation of section 3604 on the basis that, because of their race, defendant refused to pay insurance claims for which plaintiffs were entitled to be paid in connection with fire damages to their home) (emphasis added).

The broad scope of the FHA expounded by the Second Circuit is applicable here, as Fremont has admitted that its role in connection with the sale of the Premises to Plaintiff was to provide her with financing.[56] Accordingly, the Complaint amply pleads facts sufficient to support a claim under section 3604(b). In particular, Mrs. Joseph applied for credit and was given two loans: a 30-year ARM loan from Fremont in the amount of $420,000 and a 30-year mortgage loan from Fremont in the amount of $78,750 with a fixed interest rate of 11%.[57]

Mrs. Joseph has also properly pled a claim of "reverse redlining" under the FHA. Defendant Fremont argues that "New York Courts have previously held that a plaintiff cannot

---

[56] Fremont MoL ¶ 2.
[57] Compl. ¶¶ 28, 49.

state a claim pursuant to FHA or ECOA based upon a theory of 'reverse redlining,'"[58] relying on

*Equicredit Corp. of N.Y. v. Turicos.*[59]  In doing so, however, Fremont has mischaracterized the

*Equicredit Corp.* opinion.  In *Equicredit Corp.*, the court dismissed the defendant's FHA

counterclaims, because the defendant did not meet the requirement that he "applied for and was

qualified for loans":

> With regard to the counterclaims alleging violations of the ECOA
> and FHA, to establish a prima facie case, the mortgagors needed to
> establish that they qualified for the loans in question.  Here, the
> counterclaims are based upon the contention that the mortgagors
> did *not* qualify for the loans.  Accordingly, the mortgagors could
> not establish a prima facie case for violation of ECOA or FHA,
> and the first and second counterclaims should have been
> dismissed.[60]

Accordingly, the court dismissed defendant's counterclaims for failure to show that they were

qualified for the loans at issue, an essential element of a reverse redlining claim.  The court said

nothing about the actionability of a reverse redlining claim under the FHA or ECOA.  Fremont

simply confuses actionability of a reverse redlining claim with dismissal of that claim based on

failure to satisfy one of its essential elements.

Indeed, as acknowledged by Fremont, a reverse redlining claim has been held actionable

under the FHA and ECOA by the Eastern District of New York.[61]  In *Barkley* the court set forth

the elements of a reverse redlining claim:

> [I]n order to establish a *prima facie* case of discrimination based
> on reverse redlining, a plaintiff must show:
>
> (1) that she is a member of a protected class; (2) that she applied
> for and was qualified for loans[62]; (3) that the loans were given on

---

[58] Fremont MoL ¶ 6.
[59] 300 A.D.2d 344 (N.Y. App. Div. 2002)
[60] 300 A.D.2d at 346 (citation omitted).
[61] *See* Fremont MoL  ¶ 7.
[62] This element is not read "to require that plaintiffs were qualified for the precise predatory loans that were the subject of the scam, but only that they applied for and were qualified for fairly administered loans."  *Barkley*, 2007 WL at *15 (citing *Matthews*, 185 F.Supp.2d at 887 (finding that plaintiffs adequately alleged that they were

grossly unfavorable terms; and (4) that the lender continues to provide loans to other applicants with similar qualifications, but on significantly more favorable terms. <u>In the alternative, if the plaintiff presents direct evidence that the lender intentionally targeted her for unfair loans on the basis of sex and marital status, the plaintiff need not also show that the lender makes loans on more favorable terms to others.</u>[63]

While Fremont has acknowledged the four elements of a reverse redlining claim, conveniently absent from its brief is the text of the opinion that follows the four elements, depicting the exception to the fourth element of a reverse redlining claim, and emphasized above. While Mrs. Joseph has not pleaded facts sufficient to satisfy the fourth element of a reverse redlining claim, she need not do so, because she is the victim of intentional targeting for unfair loans on the basis of her race. *See Barkley*, 2007 WL 2437810, at *2-3, 15 (concluding that plaintiffs, contending that defendants "targeted persons of limited financial means and savvy who had never before purchased homes[,]" and "exploited New York City's racially segregated housing market" by "intentionally extending credit to members of minority communities on unfair terms," have "alleged sufficient facts to survive defendants' motions to dismiss their reverse-redlining claims"). Specifically, the Complaint alleges that Mr. Joseph, Plaintiff's husband, met Defendant Luctamar while Luctamar was soliciting other Haitian cab drivers, primarily spoke Creole to the Josephs to instill a sense of security, took advantage of the Josephs lack of experience related to the home buying process, and their lack of sophistication.[64] From these facts, it can be inferred that Luctamar relied on his shared national origin to attract clients. As described above, Luctamar was an agent of Fremont and Northwood, and Fremont is liable for the acts of its agents.

---

qualified for loans, even though they could not afford the fraudulent loans that were the basis for their reverse-redlining claims)).
[63] 2007 WL 2437810, at *13 (citation omitted) (emphasis added).
[64] Compl. ¶¶ 22, 24-25, 46, 64, 66.

As such, Mrs. Joseph has properly pleaded facts sufficient to support its intentional targeting theory. The Complaint clearly states that (1) Mrs. Joseph traces her national origin to Haiti; (2) she applied for credit and could have obtained credit on reasonable terms; (3) she received two loans from Fremont, and the loans were given on grossly unfavorable terms; and (4) Luctamar, an agent of Fremont, Northwood and Century 21, intentionally targeted Mrs. Joseph using Creole to communicate with her and her husband and taking advantage of the Josephs inexperience with the process of buying a home and their lack of sophistication with real estate transactions.[65] The aforementioned facts pleaded in the Complaint are sufficient to satisfy Rule 8(a)'s requirements and "gives [Fremont] fair notice of what the claim is and the grounds upon which it rests."[66] Furthermore, these facts make the claim completely plausible.

### 2. The ECOA Claims

Similarly, Plaintiff has properly pled a claim of discrimination under the ECOA. Defendant relies on *Matthews v. New Century Mortgage Corp.,*[67] for the proposition that to establish a prima facie case of discrimination pursuant to ECOA, a plaintiff must make the same allegations necessary to establish a prima facie case of discrimination pursuant to the FHA.[68]

As stated above, Plaintiff has in fact established a prima facie claim of reverse redlining under the FHA. It therefore follows that Plaintiff has also made a prima facie case of discrimination pursuant to ECOA. Reiterating the necessary facts pled in the Complaint in support of a claim of reverse redlining, the Complaint clearly avers that (1) Mrs. Joseph traces her national origin to Haiti; (2) she applied for credit, could have obtained credit on reasonable terms, she received two mortgages from Fremont, and the loans were given on grossly

---

[65] Compl. ¶¶ 11, 22, 24-25, 28, 46, 49, 64, 66.
[66] *Erickson*, 127 S. Ct. at 2200; *see also Swierkiewicz*, 534 U.S. at 513; *Boykin*, 521 F.3d at 213.
[67] 185 F.Supp.2d 874, 886-87 (S.D. Oh. 2002).
[68] See Fremont MoL ¶ 20.

unfavorable terms; and (4) Luctamar, an agent of Fremont, Northwood and Century 21, intentionally targeted her family by soliciting other Haitian cab drivers, primarily using Creole to communicate with the Josephs and taking advantage of the Josephs inexperience with the process of buying a home and their lack of sophistication with real estate transactions.[69]  As stated above, these allegations satisfy Rule 8(a)'s requirements and "gives [Fremont] fair notice of what the claim is and the grounds upon which it rests."[70]  Furthermore, the claim is completely plausible.

### 3.    The Discrimination Claims under §§ 1981, 1982, and 1985

Mrs. Joseph has sufficiently pleaded claims of discrimination under 42 U.S.C. sections 1981, 1982 and 1985.

"To state a claim for relief under Sections 1981 and 1982, a complaint must allege: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more activities enumerated in Section 1981 or Section 1982."[71]

Similarly, "[t]he four elements of a Section 1985(3) claim are (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privilege and immunities under the laws; [and] (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property deprived of any right of a citizen of the United States."[72]  "The conspiracy must be motivated by

---

[69] Compl. ¶¶ 11, 22, 24-25, 28, 46, 49, 64, 66.
[70] *Erickson*, 127 S. Ct. at 2200; *see also Swierkiewicz*, 534 U.S. at 513; *Boykin*, 521 F.3d at 213.
[71] *Barkley*, at *10 (citation omitted).
[72] *Id* (citation omitted).

some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."[73]

The crux of Fremont's argument in its Motion to Dismiss on these claims is that Mrs. Joseph has not alleged discriminatory intent as required under sections 1981, 1982 and 1985, and instead has made only conclusory assertions insufficient to withstand a motion to dismiss.[74] This argument lacks merit.

Defendant Fremont attempts to shift the discriminatory actions entirely to co-Defendant Luctamar, and thereby absolve itself of any notion of "intent" as required by sections 1981, 1982 and 1985. As discussed above, however, Luctamar's actions are imputed to Fremont by virtue of his status as agent of Fremont. Therefore, even if the discrimination suffered by Plaintiff could be attributed solely to Luctamar, as Fremont seems to allege, Mrs. Joseph has alleged facts more than sufficient to demonstrate intentional discrimination and racial animus on the part of Luctamar. Therefore, because Luctamar is an agent of Fremont, Luctamar's actions constituting intentional discrimination and racial animus are therefore imputed to Fremont, Mrs. Joseph has sufficiently pleaded claims of discrimination under 42 U.S.C. sections 1981, 1982 and 1985 against Fremont.

      **F.**    **Mrs. Joseph's State Law Claims Allege Valid Causes of Action Against Fremont**

          **1.**    **The Complaint Contains Detailed Allegations That More Than Meet the Pleading Requirements of New York State General Business Law §349**

Plaintiff has sufficiently pleaded facts that support a claim under New York State General Business Law § 349 ("the Deceptive Practices Act"). Fremont's Motion to Dismiss sets forth two arguments with regard to Mrs. Joseph's Deceptive Practices Act claim: (1) that the

---

[73] *Id* (citation omitted).
[74] Fremont MoL ¶ 26, 29, 30.

"materially deceptive acts" complained of cannot be attributed to Fremont, but are instead acts of co-Defendant Luctamar, and, additionally, that there is no allegation of any misrepresentation of Fremont; and (2) that the acts complained of were not "deceptive acts," because Plaintiff did not "act as a reasonable consumer acting reasonably under the circumstances."[75]

As to Fremont's first argument, there is no need to reiterate the agency relationship between Luctamar and Fremont. The Complaint alleges facts sufficient to support a claim that Luctamar engaged in "materially deceptive acts," and Fremont has acknowledged the deceptive acts committed by Luctamar.[76] Luctamar's acts can therefore be attributed to Fremont by virtue of Luctamar's principal-agent relationship with Fremont, thereby establishing misrepresentation by Fremont.

As to Fremont's second argument, any inquiry into the "reasonableness" of Mrs. Joseph's actions in her capacity as a consumer is premature at this point in the litigation, and facts relevant to this factual dispute will become apparent during discovery. A motion to dismiss at the pleading stage is not the proper stage during which factual disputes should be resolved, and any factual dispute at this point in the suit has no bearing on whether Plaintiff has sufficiently pleaded a claim under the Deceptive Practices Act. *See Swierkiewicz*, 534 U.S. at 515 ("[Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. Indeed, it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test.") (citation omitted).

Therefore, Plaintiff has sufficiently pled facts that support a claim under New York State General Business Law § 349.

---

[75] Fremont MoL ¶¶ 32-39.
[76] Fremont MoL ¶¶ 35, 36.

### 2.    The Complaint Contains Detailed Allegations That More Than Meet the Pleading Requirements for a Claim of Fraud

Mrs. Joseph has sufficiently pleaded facts to support a claim of fraud.  Fremont again relies on it's alleged disconnect from the actions of its agent and/or employee and co-Defendant Wilner Luctamar.[77]  As demonstrated above, however, Luctamar's actions, in his capacity as real estate sales agent, a mortgage representative and legal agent of Fremont, leave no doubt that his falsification of Plaintiff's income application provided to Fremont, and material misstatements of facts and omissions relied upon by Plaintiff, are imputed to Fremont by virtue of the principal-agent relationship.

It therefore follows that Plaintiff has satisfied the Federal Rule of Civil Procedure 9(b) requirement that a cause of action for alleged fraud be pled with particularity.  Specifically, the Complaint alleges that Luctamar instructed Mrs. Joseph to sign documents, explaining that they were "for the house" or "for the loan", blatantly omitting to provide any more detailed information.[78]  Moreover, Luctamar overtly reported false information with regard to Mrs. Joseph's status and co-signee Innocent Augustin; specifically, Luctamar reported that Mrs. Joseph was unmarried, had no dependents, and falsely stated her income and assets.[79]

Given Luctamar's principal-agent relationship with Fremont, and the facts detailed above and alleged in the Complaint, Plaintiff Mrs. Joseph has sufficiently pleaded facts to support a claim of fraud.

---

[77] Fremont MoL ¶¶ 41-43.
[78] Compl. ¶ 35.
[79] Id. ¶¶ 36-37.

### 3. The Complaint Contains Detailed Allegations That More Than Meet the Pleading Requirements of New York Human Rights Law

Plaintiff has sufficiently pleaded facts to support a claim of discrimination pursuant to New York Human Rights Law, codified at Executive Law § 296-a. Defendant argues that the standards relevant to a claim under Human Rights Law parallel those applicable under the Fair Housing Act, relying exclusively on the proposition that Plaintiff has failed to state a claim under the FHA.[80] As such, because it has been shown that Plaintiff in fact has stated a claim under the FHA, it therefore follows that Plaintiff has also stated a claim of discrimination under New York Human Rights Law.

### G. If the Federal Claims Were Dismissed Against Fremont, This Court Should Retain Pendent Jurisdiction Over Fremont and All Other Defendants to Prevent Multiple, Duplicative Trials

Even were this Court to dismiss the federal claims against Fremont, or any other defendant in this matter, the Court should still retain pendent jurisdiction over all parties and claims, because the claims against all defendants are so related that they form part of the same case or controversy.[81] *Gibbs* establishes a "doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values."[82] In *Gibbs*, the Court held that "[p]endent jurisdiction . . . exists whenever there is a claim arising under [federal law] . . . and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case' . . . The state and federal claims must derive from a common nucleus of operative fact."[83]

---

[80] Fremont MoL ¶¶ 45-46.
[81] *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).
[82] *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172-73 (1997).
[83] *Id.* at 725.

The case law defining pendent jurisdiction was codified in 28 U.S.C. § 1367, the federal

statute governing supplemental jurisdiction.[84]   Subsection (a) of 28 U.S.C. § 1367 states that:

> (a) Except as provided . . . in any civil action of which the district
> courts have original jurisdiction, the district courts *shall*
> have supplemental jurisdiction over all other claims that are so related to
> claims in the action within such original jurisdiction that they form
> part of the same case or controversy under Article III. . . . Such
> supplemental jurisdiction shall include claims that involve the
> joinder or intervention of additional parties . . .

(emphasis added).

Supplemental jurisdiction specifically contemplates the inclusion of "claims that involve

the joinder or intervention of additional parties."[85]   In *United States Fire Ins. Co. v. United*

*Limousine Serv., Inc.,*[86] the court dismissed all federal claims against two defendants, but

retained supplemental jurisdiction over these defendants, reasoning that under the language of

1367(a) the court was *required* to hear the state law claims that were part of the same case or

controversy as the federal claims against other defendants.[87]   While section 1367(c)(3) permits a

court to decline jurisdiction where *all* claims are dismissed – it was not triggered since federal

claims against other defendants remained.[88]   Likewise, although the federal claims brought by

two plaintiffs were dismissed in *Chen v. St. Beat Sportswear, Inc.,*[89] the court retained

supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367(a) "given that

the federal and state law claims derive from a 'common nucleus of operative fact.'"[90]

Here, all defendants participated in a common scheme and course of conduct.  *See*, *e.g.,*

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (pendent

---

[84] *City of Chicago*, 522 U.S. at 172-73.
[85] 28 U.S.C. § 1367.
[86] 328 F.Supp.2d 450 (S.D.N.Y. 2004).
[87] *Id.* at 453-54.
[88] *Id.* at 453.
[89] 364 F.Supp.2d 269 (E.D.N.Y. 2005).
[90] *Chen*, 364 F.Supp.2d at 277 (citing *Gibbs*, 383 U.S. at 715).

jurisdiction where all claims derive from purported sale of motion picture rights); *United States Fire Insurance*, 328 F.Supp.2d at 453 (claims arising from defendants' participation in an insurance fraud scheme); *McAnaney v. Astoria Fin. Corp*, 357 F.Supp.2d 578 (E.D.N.Y. 2005) (supplemental jurisdiction over state and federal law claims alleging impermissible fees charged in mortgage contract).  The state claims "are so related" to the federal claims, as they are derived from the same nucleus of operative fact "that they form part of the same case or controversy."[91] As a result, even if this Court were to dismiss the federal claims against Fremont, or any other defendants in this matter, the Court should retain jurisdiction over all of the defendants.

### H.    Even If the Court Grants Fremont's Motion to Dismiss, the Court Should Grant Plaintiff Leave to Amend the Complaint

In the event that the Court believes it is compelled to grant Fremont's motion to dismiss, Plaintiff respectfully requests leave to amend the complaint.  *Ronzani v. Sanofi S.A.* 899 F.2d 195, 198 (2d Cir. 1990) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." (internal quotations omitted)).  *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating that the leave to amend should be freely given); *Ramirez v. Greenpoint Mortgage Funding, Inc.*, No. C08-0369, 2008 WL 2051018, at *2 (N.D. Cal. May 13, 2008) (stating that dismissal should be with leave to amend the complaint (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998))); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

## IV.    CONCLUSION

For the foregoing reasons, Fremont's motion to dismiss should be denied in all respects.

---

[91] 28 U.S.C. § 1367.

Dated:  June 4, 2008

Respectfully submitted,

FISH & RICHARDSON P.C.

By:  _/s/ Raymond R. Castello____

Raymond R. Castello (RC 2106)
John S. Goetz (JG 8271)
Citigroup Center - 52nd Floor
153 East 53rd Street
New York, NY 10022
Telephone: (212) 765-5070
Facsimile:  (212) 258-2291

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I am employed in the County of New York.  My business address is Fish & Richardson P.C., 153 East 53rd Street, 52nd Floor, New York, New York 10022.  I am over the age of 18 and not a party to the foregoing action.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for personal delivery, for mailing with United States Postal Service, for facsimile, and for overnight delivery by Federal Express, Express Mail, or other overnight service.

On June 4, 2008 I caused a copy of the following documents:

MEMORANDUM OF LAW IN SUPPORT OF MARIE CHANTALE JOSEPH'S OPPOSITION TO FREMONT INVESTMENT & LOAN'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

to be served on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope, and addressed as follows:

Stan L. Goldberg, Esq.                           Attorneys for Defendant
Platzer, Swergold, Karlin, Levine, Goldberg       GMAC MORTGAGE
& Jaslow, LLP.
1065 Avenue of the Americas, 18th FL
New York, New York 10018

Kenneth J. Flickinger, Esq.                      Attorneys for Defendant
Knuckles & Komosinski, P.C.                      FREMONT INVESTMENT AND
220 White Plains Road, 6th Floor                 LOAN
Tarrytown, New York 10591

John P. Doherty, Esq.                            Attorneys for Defendant
Mary H. Mulhearn, Esq.                           SG AMERICAS SECURITIES, LLC
Thacher Proffitt & Wood LLP
Two World Financial Center
New York, NY 10281

Northwood Group, LLC                             (Unrepresented)
420 Columbus Avenue, Suite 301
Valhalla, New York 10595

Patrick C. Carroll                               Attorneys for Defendant
Penino & Moynihan, LLP                           CENTURY 21 WOLFF & SON
180 East Post Road, Suite 300                    BUSINESS BROKERS INC; AND
White Plains, New York 10601                     WILNER LUCATAMAR

| X | MAIL: | Such correspondence was deposited, postage fully paid, with the United States Postal Service on the same day in the ordinary course of business. |
|---|---|---|
| | PERSONAL: | Such envelope was delivered by hand to the offices of the addressee. |
| | FACSIMILE: | Such document was faxed to the facsimile transmission machine with the facsimile machine number stated above. Upon completion of the transmission, the transmitting machine issued a transmission report showing the transmission was complete and without error. |
| | FEDERAL EXPRESS: | Such correspondence was deposited on the same day in the ordinary course of business with a representative of Federal Express. |
| | EXPRESS MAIL: | Such correspondence was deposited on the same day in the ordinary course of business with a facility regularly maintained by the United States Postal Service. |
| | OVERNIGHT DELIVERY: | Such correspondence was given on the same day in the ordinary course of business to an authorized courier or a driver authorized by that courier to receive documents. |
| | E-MAIL | Such document was sent electronically via e-mail to the address on record for the respective party on the same day in the ordinary course of business |

I declare that I am employed in the office of Fish & Richardson P.C. at whose direction the service was made.

I declare under penalty of perjury that the above is true and correct. Executed on June 4, 2008 at New York, New York.